

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
12/21/2020

| | | |
|---|---|---|
| IN RE: | § | |
| **TRAILHEAD ENGINEERING LLC** | § | **CASE NO: 18-32414** |
| Debtor | § | |
| | § | **CHAPTER 7** |
| | § | |
| **RONALD J SOMMERS** | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 20-3094** |
| | § | |
| **ANIXTER, INC.,** *et al* | § | |
| Defendants | § | |

**MEMORANDUM OPINION**

Chapter 7 Trustee, Ronald J. Sommers, filed a complaint against Anixter, Inc. and

Benchmark Electrical Solutions, Inc. seeking to avoid and recover an alleged fraudulent transfer

under 11 U.S.C. §§ 544, 548, and 550, and Texas Business and Commerce Code section

24.006(a) and an alleged preferential transfer under 11 U.S.C. §§ 547(b) and 550.  In response,

Anixter, Inc. filed its motion to dismiss the complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  On October 6, 2020, the Court held a hearing and for the reasons set forth

herein, the Court denies Anixter, Inc.'s Motion to Dismiss.  Trustee, Ronald J. Sommers, is

granted leave to file an amended complaint with respect to 11 U.S.C. § 547(b)(5).

**I.  Background**

On May 3, 2018, Trailhead Engineering, LLC ("*Trailhead*" or "*Debtor*"), filed its initial

petition and schedules under chapter 7 of title 11 of the United States Code.[1]  On April 21, 2020,

Ronald J. Sommers, Chapter 7 Trustee ("*Trustee*" or "*Plaintiff*") filed his original complaint

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or
any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C. "Bankr. ECF" refers docket entries made
in the Debtors' bankruptcy case, No. 20-30140.

("*Complaint*").[2]  In his Complaint, Trustee pled four separate causes of action.  At issue in this case is a March 2, 2018 payment in the amount of $867,620.28 made to Anixter by Trailhead for invoices dated between October 18, 2017, through and including December 7, 2017, (the "*Anixter Transfer*") arising out of an Engineering, Procurement and Construction Agreement ("*EPC*") between Trailhead as general contractor and Targa Southern Delaware, LLC (the "*Targa Project*").[3]  Trailhead subcontracted with Benchmark Electrical Solutions, Inc. ("*Benchmark*"), to perform certain aspects of its work on the Targa Project.  In turn, Benchmark entered into an agreement with Anixter to subcontract a portion of its responsibilities.[4]  Benchmark subsequently failed to make payment of $867,620.28 to Anixter regarding invoices dated between October 18, 2017 through December 7, 2017.[5]  Although Trailhead had no contract with Anixter, Trailhead made a payment of $867,620.28 to Anixter on March 2, 2018.[6]  Trailhead made this payment only after Anixter sent a demand letter to Targa.[7]

On July 21, 2020, Anixter, Inc. ("*Anixter*" or "*Defendant*") filed its "Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" ("*Motion to Dismiss*").[8]  In its Motion to Dismiss, Anixter alleges that the Complaint fails to adequately allege sufficient facts to state a claim against Anixter for (i) Count I – Recovery of Anixter Transfer Pursuant to 11 U.S.C. §§ 544, 548 & 550 and Texas Business and Commerce Code section 24.006(a); and (ii) Count II[9] – Avoidance and Recovery of Anixter Transfer Pursuant to 11 U.S.C. §§ 547(b) & 550. Consequently, Anixter contends, the Complaint should be dismissed.[10]

---

[2] ECF No. 1.
[3] *Id.*
[4] *Id.*
[5] *Id.* at ¶¶ 20–21.
[6] *Id.* at ¶¶ 15, 20.
[7] *Id.* at ¶ 20.
[8] ECF No. 12.
[9] In his Complaint, Trustee mistakenly uses "Count I" twice.
[10] ECF No. 12 at 12.

On August 14, 2020, Trustee filed his response ("*Response*").[11]   Importantly, in his Response, Trustee asserts that the Complaint is pled in the alternative because one of two things about the Anixter Transfer must be true: (1) Trailhead was not legally obligated to make the Anixter Transfer, and therefore did not receive reasonably equivalent value in exchange for the Anixter Transfer (making the payment a fraudulent transfer); or (2) the agreement between Trailhead and Targa created an obligation for Trailhead to make the payment (making the transfer a preference).[12]   Additionally, Trustee requested, inter alia, that "should this Court determine that any of the arguments raised in the Motion to Dismiss have merit, [Trustee] be granted leave to amend the pleadings to meet the Court's concerns, if possible."[13]   On August 21, 2020, Anixter filed its reply.[14]   On October 6, 2020, the Court held a hearing on the Motion to Dismiss.  At the conclusion of the hearing, the Court took the matter under advisement and now issues the instant Memorandum Opinion.

## II.   Conclusions of Law

### A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11."  Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[15]   This court determines that pursuant to 28 U.S.C. § 157(b)(2)(F) and (H), this Adversary Proceeding contains core matters, as it primarily involves claims for fraudulent conveyances and preferential transfers.[16]

---

[11] ECF No. 21.
[12] *Id.* at ¶ 3.
[13] ECF No. 1.
[14] ECF No. 22.
[15] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[16] *See* 28 U.S.C. § 157(b)(2)(H).

Furthermore, this Court may only hear a case in which venue is proper.[17]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor's main Chapter 7 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.

## B. Constitutional Authority to Enter an Interlocutory Order

This Court must evaluate whether it has constitutional authority to enter an order in this case.  In *Stern,* which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim."[18]  However, *Stern* is inapplicable to the instant case. *Stern* concerned final orders entered by the bankruptcy court and here, the Court need only enter an interlocutory order because a motion to dismiss pursuant to Rule 12(b)(6), like the one filed Anixter, is interlocutory.

If a bankruptcy court does not possess the necessary constitutional authority to enter a final judgment in a proceeding, the court may still issue interlocutory orders in that proceeding.[19] Entering an interlocutory order does not implicate "the constitutional limitations on the Court's authority to enter final judgments."[20]  This opinion does not determine all of the claims presented in this proceeding.  Instead, the Court only determines whether two out of the four causes of action pled by the Trustee should be dismissed.  An order resolving fewer than all of the claims

---

[17] 28 U.S.C. § 1408.
[18] *Stern v. Marshall*, 564 U.S. 462, 503 (2011).
[19] *Trevino v. HSBC Mortg. Serv. (In re Trevino)*, 535 B.R. 110, 125 (Bankr. S.D. Tex. 2015).
[20] *West v. WRG Energy Partners LLC (In re Noram Res., Inc.)*, 2011 Bankr. LEXIS 5183, at *3 (Bankr. S.D. Tex. Dec. 30, 2011).

presented in a complaint is interlocutory.[21]  Accordingly, the order accompanying this opinion is interlocutory and thus may be entered without a determination of the Court's constitutional authority to enter a final judgment.

### III.   Analysis

#### A. Standard of Review for Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), this Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[22]  However, motions to dismiss are disfavored and therefore, rarely granted.[23]  This Court reviews motions under Rule 12(b)(6) by "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff."[24]  Although this Court "will not strain to find inferences favorable to the plaintiff,"[25] the facts need only be sufficient "for an inference to be drawn that the elements of the claim exist."[26]

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must meet Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements.   Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."[27]  In *Ashcroft v. Iqbal*, the Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts . . . permit the court to infer more than the mere possibility of misconduct."[28]  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."[29]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[21] *Id.*

[22] FED. R. CIV. P. 12(b)(6).

[23] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

[24] *Stokes v. Gann*, 498 F. 3d 483, 484 (5th Cir. 2007) (per curiam).

[25] *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.,* 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

[26] *Harris v. Fidelity Nat'l Info. Serv* (*In re Harris*), Nos. 03-44826, 08-3014, 2008 Bankr. LEXIS 1072 at *11 (Bankr. S.D. Tex. Apr. 4, 2008) (citing *Walker v. South Cent. Bell Tel. Co.*, 904 F2d 275, 277 (5th Cir. 1990)).

[27] FED. R. CIV. P. 8(a).

[28] *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)).

[29] *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

inference that the defendant is liable for the misconduct alleged."[30]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[31]  It is worth noting that the Fifth Circuit has yet to decide whether to impose the Rule 9(b) pleading standard on constructive fraud claims.[32]  And while some district courts in the Fifth Circuit have determined that constructive fraud claims need only meet the Rule 8(a) standard, this Court will nevertheless evaluate, in light of Anixter's Motion to Dismiss, each of Trustee's claims under the heightened standard.[33]  The Court will next turn to Trustee's Complaint.

### B. The Trustee's Complaint

#### 1. Count I - Recovery of Anixter Transfer Pursuant to 11 U.S.C. §§ 544, 548 & 550 and Texas Business and Commerce Code § 24.006(a)

In Count I, Trustee brings actual and constructive fraudulent transfer claims under §§ 544 and 548 seeking to avoid several transfers under the Texas Uniform Fraudulent Transfer Act ("*TUFTA*").[34]  The Trustee's claims are brought under the TUFTA 24.006(a).  "[T]he elements of an actual fraudulent transfer under TUFTA are: (i) a creditor; (ii) a debtor; (iii) the debtor transferred assets shortly before or after the creditor's claim arose; and (iv) with actual intent to hinder, delay, or defraud any of the debtor's creditors."[35]  The elements of a constructive fraudulent transfer under Texas law are the same as actual fraudulent transfer except instead of pleading fraudulent intent, the plaintiff must plead facts demonstrating: (i) lack of reasonably

---

[30] *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

[31] *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) ("A complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level.") (citations omitted).

[32] *Id.* (declining to decide whether Rule 9(b) applies to claims of constructive fraud because plaintiff's pleadings satisfied both the Rule 8(a) standard and the Rule 9(b) standard).

[33] *See id.*

[34] Bankr. ECF No. 1 at 7.

[35] *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019) (citation omitted); *see* TEX. BUS. & COM. CODE § 24.005(a)(1).

equivalent value for the transfer; and (ii) the transferor was "financially vulnerable" or insolvent at the time of the transaction.[36]   The two aforementioned requirements of a constructively fraudulent transfer claim are the grounds on which Anixter attacks Trustee's Complaint.

In its Motion to Dismiss, Anixter alleges that Trustee's Complaint fails to adequately allege sufficient facts to state a claim against Anixter for a fraudulent transfer under § 548 and/or Texas Business and Commerce Code section 24.006(a) because (i) the Complaint fails to adequately allege Trailhead received less than reasonably equivalent in exchange for the Anixter Transfer (the "*Reasonably Equivalent Value Prong*"); and (ii) Trustee failed to plausibly allege that Trailhead was insolvent or was left with unreasonably small capital at the time of the Anixter Transfer (the "*Insolvency Prong*").[37]   Consequently, Anixter argues, the Complaint should be dismissed.[38]   The Court will address each one in turn.

### i.   The Reasonably Equivalent Value Prong

In its Motion to Dismiss, Anixter asserts that "the Complaint is devoid of anything alleging or otherwise concerning the value of the goods provided, or the 'portion of [the] responsibilities' satisfied, by Anixter" nor are there any factual allegations in the Complaint that these transactions were not undertaken in good faith or at arm's length by Anixter.[39]   Overall, Anixter argues that nothing in the Complaint permits a reasonable inference that Trailhead received less than reasonably equivalent value for the Anixter Transfer.[40]   In response, support for Trustee's allegation is two-fold: (i) Targa's liability to sub-contractors is statutorily limited under Texas Property Code sections 53.101-107;[41] and (ii) the "current lien claims against Targa greatly

---

[36] *Id.* at 120 (first citing *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562, 566 & n.21 (Tex. 2016); then citing Tex. Bus. & Com. Code § 24.006(a)); *see* Tex. Bus. & Com. Code § 24.005(a)(2).
[37] ECF No. 12, ¶¶ 19–28.
[38] ECF No. 12.
[39] *Id.* at 17.
[40] *Id.* at 18
[41] ECF No. 1, ¶ 25, Required Retainage for Benefit of Lien Claimants.

exceed the amount of its statutory retainage."[42]   However, this, argues Anixter, ignores other liens

it may have asserted such as mechanic's liens and liens against real property.[43]   Anixter further

contends that payment to Anixter was a "dollar for dollar discharge of indebtedness" that was

unique only insofar as it skipped over DanCar Energy Construction, LLC ("*Dancar*") and

Benchmark in the privity chain.[44]   Trailhead would owe those sums to DanCar or Benchmark

regardless and thus, the payment to Anixter discharged a liability Trailhead would ultimately come

to owe one way or another.[45]   According to Anixter, Trailhead had an independent duty under the

EPC to complete the Project and show that "all payrolls, [t]axes, liens, charges, claims, demands,

judgments, security interests, bills for [e]quipment, and any other indebtedness connected with the

[w]ork have been paid . . . ."   Anixter contends that it supplied valuable materials to the Targa

Project and Trailhead's failure to ensure payment to Anixter would mean breaching the EPC.[46]

        In support of its argument, Anixter cites to, inter alia, *In re Caremerica, Inc*.  In that case,

the bankruptcy court dismissed preference and fraudulent transfer claims where the trustee

plaintiff alleged the debtor transferred funds to a creditor through a bank account owned by a

non-debtor affiliate.[47]   The bankruptcy court held that the plaintiff failed to adequately plead a

transfer of an interest of the debtor in property where the trustee "fail[ed] to support such

allegations with factual assertions other than dates, amounts, and names of transferees."[48]   The

bankruptcy court found that an identification of the consideration received by each transferor and

information as to why the value of such consideration was less than the amount transferred was

---

[42] *Id.*
[43] ECF No. 12, ¶ 26.
[44] *Id.* at ¶ 27.
[45] *Id.*
[46] *Id.*
[47] *In re Caremerica, Inc.*, 409 B.R. 737, 750 (Bankr. E.D.N.C. 2009).
[48] *Id.* at 756.

missing from the trustee's complaint.[49]   As such, the bankruptcy court denied the plaintiff's constructive fraud claim as pled while allowing the plaintiff to amend and re-plead.

In response, the Trustee asserts that the factual allegations in the Complaint establish that the Anixter Transfer was made in satisfaction of obligations owed to Anixter by Benchmark, not Trailhead.   Trustee argues that if proven, Trustee has pled that Trailhead and Anixter had no contractual relationship which would make Trailhead liable to Anixter.[50]   Rather, it was Benchmark that entered into an agreement with Anixter.[51]   Additionally, and if proven, Trustee asserts that the Complaint as drafted contains sufficient allegations that Trailhead did not receive reasonably equivalent value in exchange for the Anixter Transfer because the Complaint alleges that Trailhead had no contractual privity with Anixter that obligated Trailhead to make the $867,620.28 payment directly to Anixter.[52] Trustee provided the following chart in his Complaint demonstrating the respective relationship between the parties for the Targa Project.[53]



[49] *Id.*
[50] ECF No. 1, ¶ 15.
[51] *Id.*
[52] *Id.*
[53] ECF No. 1 at 4.

Lastly, Trustee argues that to the extent Trailhead had any liability under its agreement with Targa, the limitations found in Texas Property Code sections 53.101-107 could establish that the Anixter Transfer did not reduce any obligation that Trailhead had to Targa and because the current lien claims against Targa greatly exceed the amount of its statutory retainage, the Anixter Transfer did not reduce the amount of Targa's claim against Trailhead under the Targa Agreement (*i.e.*, the Trailhead's estate was diminished by the Anixter Transfer).[54]

Here, unlike the plaintiff in *In re Caremerica, Inc.*, Trustee provided more than allegations supported only by factual assertions with dates, amounts, and names. In the Complaint, Trustee alleged that the Anixter Transfer was made on account of an antecedent debt owed by Trailhead before the Anixter Transfer was made.[55]  Trailhead and Targa entered into the Targa Agreement. Under the Targa Agreement, Trailhead had the obligation to indemnify Targa in the event that any subcontractor, sub-subcontractor, or any other person working through them file a lien or other encumbrance against the Targa Project or related property and when Trailhead made the Anixter Transfer, Targa was therefore a creditor of Trailhead, and the payment was made for its benefit.[56] Additionally, Trustee attached to his Complaint invoices of payments made from Trailhead to Anixter in the total amount of $867,620.28.[57]

Next, in the Complaint, Trustee demonstrated that when Anixter sent the invoices related to the Anixter Transfer, they were addressed to "OAHU [TARGA] PLANT – BENCHMARK ELCTRC" or "OAHU [TARGA] PLANT – BENCHMARK ELECTRIC with copies of the invoices sent to Trailhead, DanCar and Benchmark."[58]  The Court is persuaded that Trustee's allegations bring the contractual privity between Trailhead and Anixter into question.  Despite

---

[54] *Id.* at ¶ 25.
[55] ECF No. 1, ¶ 37.
[56] *Id.*
[57] ECF No. 1-4.
[58] *Id.*

the grievances set forth by Anixter in its Motion to Dismiss, these allegations support Trustee's contention that the $867,620.28 payment was made in satisfaction of obligations to Anixter by Benchmark, not Trailhead.  If the payments were not made in satisfaction of obligations owed by Trailhead, it is plausible that Trailhead did not receive reasonably equivalent value for the Anixter Transfer.  The Court need not examine the remaining grievances and arguments at this stage because the facts pled on the face of the Complaint are sufficient to survive dismissal. Accordingly, the Court finds that dismissal is unwarranted under the reasonably equivalent prong.

### ii.  The Insolvency Prong

Regarding the insolvency prong, Anixter alleges that Trustee's allegations concerning insolvency provide little factual support, resting largely instead on a recital of the statute's elements.[59]  Anixter contends that Trustee's allegations in the Complaint provide "at best, a snapshot of a selected subset of Trailhead's assets (receivables) and liabilities with no detail relating those assets or liabilities to the time of the Transfer that would allow one to conclude the liabilities exceeded the assets."  Of course, to support a constructive fraud claim pursuant to § 548, Trustee must have pled in his Complaint that that Trailhead was "insolvent on the date that such transfer was made . . . or became insolvent as a result of [the Anixter] [T]ransfer . . . ."[60]

In *In re Brown Medical Center, Inc.* the district court in the Southern District of Texas found that plaintiff's complaint met the heightened pleading requirements under Rule 9(b) where plaintiff alleged that when transfers were made, the debtor was either insolvent or became

---

[59] ECF No. 12 at 19.
[60] 11 U.S.C. § 548(a)(1)(B).

insolvent as a result of the transfers.[61]   While the defendants challenged whether the debtor was actually insolvent or became insolvent as a result of the alleged transfers, the district court held that the facts in the plaintiff's complaint were presumed to be true for purposes of the motion to dismiss.   As such, the district court found that plaintiffs adequately stated a fraudulent transfer claim.

Here, Trustee alludes to Trailhead's insolvency in several portions of the Complaint. Trustee points to a portion of the Complaint which states:

> The Debtor was insolvent when it made the Anixter Transfer as the fair market value of its assets exceeded its liabilities.   More specifically, . . . [Trailheads]'s accounts receivable were uncollectible, and it was not capable of completing work required on its various projects, thereby rendering it liable to its customers for millions of dollars in damages.   As a result, [Trailhead] was insolvent.[62]

In two paragraphs of the Complaint, Trustee alleged that "[a]t the time of the Anixter Transfer, the Debtor was, or was presumed to be, insolvent."[63]   Trustee maintains, and this Court agrees, that these allegations put Anixter on proper notice of the facts that resulted in Trailhead's insolvency at the time of the Anixter Transfer (uncollectible receivables and large liabilities relating to inability to finish its projects).   Like the complaint in *In re Brown Medical Center*, Trustee's facts are presumed true for purposes of the Motion to Dismiss.   Accepting all facts as true, Trailhead's insolvency is sufficiently established, and dismissal is unwarranted on this ground as well.

## 2. Count II[64] - Avoidance and Recovery of Anixter Transfer Pursuant to 11 U.S.C. §§ 547 & 550.

---

[61] *In re: Brown Med. Ctr., Inc.*, 552 B.R. 165, 169–70 (S.D. Tex. 2016).
[62] ECF No. 1, ¶ 26, 52.
[63] *Id.* at ¶ 39, 64.
[64] Trailhead's Complaint uses "Count I" for two counts. For the purposes of this memorandum, the Court will refer to "Count I [*sic*]" as "Count II."

In Count II, Trustee pled, in the alternative, that the Anixter Transfer is an avoidable preference under § 547(b).  Section 547(b) provides that:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses under subsection (c), avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of the creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Section 550, inter alia, provides that if a transfer is avoided under § 547, the trustee may recover "the property transferred, or, if the court so orders, the value of such property from the initial transferee of such transfer, the entity for whose benefit the transfer was made, or any immediate or mediate transferee of the initial transferee."[65]  Trustee contends that Anixter is the initial transferee, and Benchmark was the entity for whose benefit the Anixter Transfer was made.[66]  Therefore, Trustee concludes that the Anixter Transfer or the value of the Anixter Transfer that is avoidable under § 547 is recoverable for the estate under § 550.[67]

In its Motion to Dismiss, Anixter alleges that the Complaint fails to adequately allege sufficient facts to state a claim against Anixter for a preference under § 547 because the Complaint failed to establish that (i) Trustee exercised reasonable due diligence; (ii) that the

---

[65] *See In re Giant Gray, Inc.*, No. 18-31910, 2020 WL 6226298, at *1 (Bankr. S.D. Tex. Oct. 22, 2020)
[66] ECF No. 1, ¶ 45.
[67] *Id.*, ¶ 46.

Anixter Transfer was made from property of the estate; (iii) that the Anixter Transfer was made for the benefit of one of Trailhead's creditors; (iv) that the Anixter Transfer was made on account of antecedent debt; and (v) that Targa received more than it would in a hypothetical chapter 7.[68]  Consequently, Anixter argues, the Complaint should be dismissed.[69]  The Court will address each one in turn.

### i.   Whether the Complaint Sufficiently Establishes the Trustee's Due Diligence

Anixter, in its Motion to Dismiss, alleges that the Complaint contains no factual allegations to the effect that the Trustee conducted any due diligence of the factual circumstances surrounding the Anixter Transfer or has taken into account the obvious defenses Anixter has to the preference claim.[70]  Of course, Anixter is referring to the language in § 547(b), delineating that "the trustee may, based on reasonable due diligence in the circumstances of the case and taking into account a party's known or reasonably knowable affirmative defenses" avoid a transfer.[71]  According to the Motion to Dismiss, Trustee's failure to allege that he conducted such due diligence before filing the Complaint warrants dismissal.  However, Anixter does not cite to any authority actually stating that the failure to affirmatively allege diligence leads to dismissal, beyond a reference to COLLIER which states that "it is unclear whether the 'reasonable due diligence' requirement is an element of the preference claim."[72]  While the Court need not determine today whether "reasonable due diligence" is an element of any preference claim, a plain reading of the statute references due diligence "in the circumstances of the case" meaning that a level of discretion is involved.

---

[68] ECF No. 12, ¶ 32.
[69] *Id.*
[70] *Id.* at ¶ 34.
[71] 11 U.S.C. § 547(b).
[72] 5 COLLIER ON BANKRUPTCY ¶ 547.02A (16th ed. 2020).

Here, the Complaint demonstrates that Trustee reviewed Trailhead's bank and wire records,[73] invoices relating to the Anixter Transfer,[74] correspondence,[75] and the contract between Targa and Trailhead.[76]   Additionally, Trustee mapped out the alleged structure of the parties' relationships in the Complaint.[77]   Accordingly, based on these allegations contained in the Complaint, the Court finds that given the circumstances of this case, and taking into account Anixter's known or reasonably knowable affirmative defenses, Trustee's Complaint contains sufficient information regarding the reasonable due diligence prong of § 547(b) to survive dismissal.

ii.     **Whether the Complaint Sufficiently Establishes that the Anixter Transfer was Made from Property of the Estate**

Section 547(b) sets forth that the trustee may avoid a transfer that is "of an interest of the debtor in property."[78]   Anixter complains that while Trustee has articulated that the Anixter Transfer originated from Trailhead's 7391 Account and asserts the Anixter Transfer "was a transfer of an interest in property of [Trailhead],"[79] Trustee has not alleged facts to show the funds in the 7391 Account were property in which Trailhead held an equitable interest.[80]   The absence of these key allegations, argues Anixter, underscores the failure of Trustee to thoroughly consider the "circumstances of the case," such as: (a) Texas Property Code section 162.001(a), which provides that "[c]onstruction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor . . . under a construction contract such as the EPC for the improvement of specific real property in this state;" and (b) the provisions of the EPC itself,

---

[73] ECF Nos. 1-1, 1-2.
[74] *Id.*, 1-4.
[75] *See* ECF No.1, ¶ 20.
[76] *See id.* at ¶ 25.
[77] *See id.* at ¶ 15.
[78] 11 U.S.C. § 547(b).
[79] ECF No. 12, ¶ 36.
[80] *Id.*

which required Trailhead to engage Cinium Financial Services, Corp. ("*Cinium*") to receive all Targa payments to Trailhead for the Project directly from Targa and place them into a separate, segregated bank account at M&T Bank for the Project.[81]

Trustee's Complaint alleges that the Anixter Transfer originated "from Trailhead's bank account at Frost Bank" and includes a copy of the bank statement itself.[82]  The bank statement at Exhibit A lists the account holder as "Trailhead Engineering LLC."[83]  It contains no information indicating the account was a trust account of any form.[84]  Accordingly, taken as true, the allegations in Trustee's Complaint establish that the Anixter Transfer was made from property of the estate.

### iii.    Whether the Complaint Sufficiently Establishes that the Anixter Transfer was Made to or for the Benefit of One of Trailhead's Creditors

Anixter protests that in his Complaint, Trustee does not allege that Anixter was a creditor of Trailhead.[85]  Section 547(b)(1) mandates that in order for the trustee to avoid any transfer of interest, the transfer must be "to or for the benefit of the creditor."[86]  According to Anixter, rather, Trustee alleges that the Transfer was "for the benefit of" a creditor – Targa, the Owner.[87] Specifically, Trustee alleges that "Trailhead had the obligation to indemnify [Targa] in the event that any subcontractor, sub-subcontractor, or any other person working through them file a lien or other encumbrance against the Targa Project or related property."[88]  But, argues Anixter, there is no allegation in the Complaint that Anixter liened the Project.  Rather, it was Trailhead that

---

[81] *Id.*
[82] ECF No. 1-1.
[83] *Id.*
[84] *See In re R.W. Leet Electric, Inc.*, 372 B.R. 846, 856 (6th Cir. BAP 2007) ("The Trustee herein met her burden under §547(g) of establishing that the transfer was 'of an interest of the debtor in property' when she introduced evidence that [the defendant] was paid from the Debtor's general, commingled bank account—an account that was not in any form or fashion designated as a trust account.").
[85] ECF No. 12, ¶ 37.
[86] 11 U.S.C. § 547(b)(1).
[87] ECF No. 12, ¶ 37.
[88] ECF No. 1, ¶ 37.

was a creditor of Targa to the extent the Project was completed by virtue of the Anixter Transfer, having completed, at least in part, its performance under the EPC and receiving an entitlement to Targa's performance as a result.[89]   Accordingly, argues Anixter, the Complaint does not contain any allegations that the Anixter Transfer was to or for the benefit of any actual creditor of Trailhead.

In response, Trustee points to his Complaint where he alleges that the Anixter Transfer was made for the benefit of Targa.[90]   Trustee states that Trailhead entered into the EPC, which obligated Trailhead to indemnify Targa against any lien claims.[91]   And as noted by Anixter in its Motion to Dismiss: "Trailhead had an independent duty under the EPC to complete the Project and show that 'all payrolls, taxes, liens, charges, claims, demands, judgments, security interests, bill for equipment, and any other indebtedness connected with the work have been paid.'"[92] Therefore, Trustee maintains that the EPC created a "claim" for Targa against Trailhead under the Bankruptcy Code's definitions, even if it was "contingent, . . . unmatured, [or] disputed."[93] Since Targa had a "claim against Trailhead that arose at the time of or before the order for relief concerning [Trailhead]," Trustee asserts that Targa was one of Trailhead's creditors.[94]   Further, Trustee argues that should this Court determine that Trailhead had an obligation to pay the Anixter Transfer (i.e., there was reasonably equivalent value for the Anixter Transfer), it would necessarily mean that Targa was a creditor when the payment was made.[95]

The "to or for the benefit of a creditor" language under § 547(b) is subject to broad interpretation.  This broad language of the preference statute is supported by the presence of the

---

[89] ECF No. 12, ¶ 37.
[90] ECF No. 1, ¶ 37.
[91] *Id.*
[92] ECF No. 12, ¶ 37.
[93] 11 U.S.C. § 101(5)(A).
[94] ECF No. 21, ¶ 29; 11 U.S.C. §101(10)(A).
[95] ECF No. 21, ¶ 30.

disjunctive "or," which allows for a preference whether or not a creditor benefits from the alleged transfer.[96]  As set forth by the Fifth Circuit, there is no statutory difference between a "debt" and a "claim" under the broad language of the preference statute.[97]  Similarly, § 547(b)(1) refers to "a creditor" within the definition under 11 U.S.C. § 101(10), which implies that a transfer of the debtor's property to or for the benefit of virtually every kind of creditor may be avoided as a preference.[98]  Had Congress intended for a narrower definition to apply, the statute would have indicated that a preference may apply only to "the creditor who received the transfer" or "the benefitting creditor."[99]

Recall that the Trustee pled in the alternative stating in his Response that "the agreement between Trailhead and Targa created an obligation for Trailhead to make the payment (making the transfer a preference).[100]  Here, accepting Trustee's allegations as true, Trailhead's $867,620.28 payment to Anixter satisfied Targa's claim (even if contingent or unmatured) because it prevented the imposition of any liens or indebtedness on the property as required by the EPC.  In other words, if proven, Trailhead's $867,620.28 payment to Anixter reduced Trailhead's obligation to Targa.[101]  Accordingly, the Trustee's Complaint sufficiently pled the "to or for the benefit of a creditor" requirement under § 547(b).

### iv.  Whether the Complaint Sufficiently Establishes that the Anixter Transfer was Made on Account of Antecedent Debt

Anixter, in its Motion to Dismiss, asserts that it did not lien the Project, meaning Trailhead did not owe a debt to Targa at the time of the Transfer and as such, Trustee failed to allege facts showing that the "debt," if any, was "antecedent," and, consequently, Count II must

---

[96] 11 U.S.C. § 547(b)(1); *see In re Black Elk Energy Offshore Operations, LLC*, 605 B.R. 138, 148 (Bankr. S.D. Tex. 2019).
[97] *Southmark Corp. v. Schulte, Roth, & Zabel*, (*In re Southmark Corp.*), 88 F.3d 311, 318 (5th Cir. 1996).
[98] 5 COLLIER ON BANKRUPTCY ¶ 547.03 (16th 2020).
[99] *In re Black Elk Energy Offshore Operations, LLC*, 605 B.R. at 148.
[100] ECF No. 21, ¶ 3.
[101] *See* ECF No. 1 at 7.

be dismissed.[102]  Section 547(b)(2) provides that the trustee may avoid as a preference a transfer of an interest of the debtor in property if the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made."[103]  While "antecedent debt" is not defined by the Code, a debt is "antecedent" for purposes of § 547(b) if it was incurred before the alleged preferential transfer.[104]

Here, as discussed, the Complaint alleges that Trailhead and Targa entered into the EPC, whereby "Trailhead had the obligation to indemnify Targa in the event that any subcontractor, sub-subcontractor, or any other person working through them file a lien or other encumbrance against the Targa Project or related property."[105]  The Complaint further alleges that on February 15, 2018, Anixter sent a payment demand of $867,620.28 to Targa, copying Trailhead, DanCar, and Benchmark for unpaid invoices owed by Benchmark to Anixter.[106]  Trustee attached to his Complaint copies of the invoices sent to Benchmark by Anixter from October 2017 through December 2017.[107]  Given that the last invoice sent in December had a 60-day term, this meant payment would have been due by February 5, 2018, at the latest.[108]  The Anixter Transfer was made on March 2, 2018, after the alleged obligation to make payment on the invoices came due.[109]  Assuming the facts pled are true, even though Trailhead's obligation to Targa under the EPC may have been "contingent . . . unmatured, [or] disputed," it still constitutes a claim.[110]  As set forth above, the Fifth Circuit found that there is no statutory difference between a "debt" and

---

[102] ECF No. 12 at 23.
[103] 11 U.S.C. § 547(b).
[104] *In re Ramba, Inc.*, 416 F.3d 394, 399 (5th Cir. 2005).
[105] ECF No. 1, ¶ 37.
[106] *Id.*
[107] ECF No. 1-4.
[108] *See* ECF No. 1-1 (invoice states "net60" under "payment terms").
[109] ECF No. 1, ¶ 19.
[110] *See Johnson*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2154 (1991); *In re Southmark Corp.*, 88 F.3d at 316.

a "claim" under the broad statutory language of the preference statute.[111]   Therefore since a debt

became due before the alleged transfer, the Complaint sufficiently pleads that the payment was

made on an antecedent debt.

>    **v.    Whether the Complaint Sufficiently Establishes that Targa Received More
>         than it Would in a Hypothetical Chapter 7**

The final aspect of § 547(b) at issue in this dispute is the hypothetical liquidation test.

Pursuant to § 547(b)(5), the creditor must receive more from the transfer than it would have if

"(A) the case were a case under chapter 7 . . . ; (B) the transfer had not been made; and (C) such

creditor received payment of such debt to the extent provided by the provisions of this title."   In

its Motion to Dismiss, Anixter's grievance is that missing from the Trustee's Complaint are facts

demonstrating that the Anixter Transfer enabled Targa to receive more that it would have from

Trailhead in a chapter 7 bankruptcy had the Transfer not been made.[112]   Even if Trustee amended

his Complaint, argues Anixter, Trustee cannot prove that the Transfer to Anixter improved

Targa's recovery.[113]   Anixter maintains that because Targa had no claim against Trailhead for the

Anixter deliveries, it would get nothing on account of those deliveries in a hypothetical chapter

7.   Thus, Anixter concludes that in the hypothetical scenario contemplated by § 547(b)(5), Targa

would be in no worse position than it is now: the Targa Project was enhanced by Anixter's

delivery, but it holds no claim against Trailhead until Anixter establishes a lien.[114]

Alternatively, Anixter posits that assuming arguendo that the measure of the

improvement in Targa's position is equal to the amount of the Anixter Transfer, for purposes of

analyzing what the transferee would have received in a hypothetical chapter 7 liquidation of

Trailhead, Trustee has not pled factual allegations that would allow the Court to conclude the

---

[111] *In re Southmark Corp.*, 88 F.3d at 318.
[112] ECF No. 12, ¶ 39.
[113] *Id.* a ¶ 39.
[114] *Id.*

construction trust statutes would not apply in the hypothetical bankruptcy analysis under §
547(b)(5) in this case.  Consequently, a hypothetical liquidation would have resulted in full
payment to Anixter given the risk of criminal liability for failing to properly handle funds owed
to subcontractors in a case such as this.[115]

In his Complaint, Trustee sets forth the relevant provisions of § 547(b) providing that a
debtor may avoid a transfer if the transfer "(e) . . . enable[d] the creditor to receive more than it
would receive had (i) the transfer not been made; and (ii) the creditor received payment of the
debt to the extent provided by the Bankruptcy Code."[116]  In support, Trustee asserted "[t]he
Anixter Transfer enabled a greater recovery [for Targa] on the antecedent debt than it would
have received had the Anixter Transfer not been made and payment of the antecedent debt was
made pursuant to the Bankruptcy Code."[117]  While Trustee uses portions of the petition and
filings in the main bankruptcy case to bolster his argument, these factual allegations are wholly
lacking in the Complaint itself.[118]  The Court will draw reasonable inferences from the facts pled
in the Complaint, but will not read in facts or develop arguments on behalf of the parties.
Trustee's allegations are a mere conclusory recitation of the elemental test under § 547(b)(5).
Accordingly, Trustee's Complaint fails to meet the requirements of Rule 8(a)(2) and achieve the
level of specificity laid out in *Iqbal* and *Twombly* by stating a plausible claim of § 547(b)(5) with
factual content that raises a right to relief above the speculative level.[119]

However, under Rule 15(a)(1), Trustee had 21 days after Anixter filed its Rule 12(b)(6)
motion to amend his Complaint without consent from Anixter or a grant of leave from this

---

[115] *Id.*
[116] ECF No. 1, ¶ 35.
[117] *Id.* at ¶ 40.
[118] ECF No. 21 (Trustee refers to portions of Trailhead's petition and proofs of claim filed in the main bankruptcy case).
[119] *Iqbal,* 556 U.S. at 679; *Twombly,* 550 U.S. at 555.

Court.[120]   Because that deadline passed, Trustee's request for leave "shall be freely given [if] justice so requires."[121]   Absent a formal motion for leave, a requesting party must set forth with particularity the grounds for the amendment and the relief sought."[122]   This requires a movant to give the court some notice of the nature of his proposed amendments.[123]   Although no strict guidelines exist as to what constitutes a sufficient request for leave to amend, it is clear that some specificity is required.[124]   Here, in his Response, Trustee requests that "should this Court determine that any of the arguments raised in the Motion have merit, [Trustee] be granted leave to amend the pleadings to meet the Court's concerns, if possible."[125]   As previously mentioned, Trustee included additional facts in his Response relevant to § 547(b)(5).[126]   Anixter had sufficient notice of Trustee's opportunity to amend the Complaint, evidenced by Anixter's statement in its reply to Trustee's § 547(b)(5) argument that said, "even with the benefit of an amendment."[127]   Accordingly, Trustee's request for leave to file an amended complaint with respect to 11 U.S.C. § 547(b)(5) is granted.[128]

## IV.   Conclusion

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

---

[120] FED. R. CIV. P. 15(a)(1).
[121] FED R. CIV. P. 15(a)(2); *see In re Giant Gray, Inc*., 2020 WL 6226298, at *3.
[122] *United States ex. rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003) (quoting *United States ex re. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386–87 (5th Cir. 2003)).
[123] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).
[124] *Thomas*, 832 F.3d at 590.
[125] ECF No. 1.
[126] ECF No. 21.
[127] ECF No. 22.
[128] ECF Nos. 1, 21.

SIGNED 12/21/2020.

Eduardo V. Rodriguez
United States Bankruptcy Judge